**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:26-cv-25030-KMM

LUIS ANGEL RODRIGUEZ TORRES,

Petitioner,

v.

WARDEN, KROME NORTH SERVICE PROCESSING CENTER, *et al.*,

Respondents.
_______________________________________/

**ORDER**

THIS CAUSE came before the Court upon Petitioner Luis Angel Rodriguez Torres's ("Petitioner") Petition for Writ of Habeas Corpus and Request for Order to Show Cause (the "Petition" or "Pet."). (ECF No. 1). The Court issued an Order to Show Cause (the "OTSC") requiring Respondents to file one consolidated memorandum of fact and law to show why the Petition should not be granted. *See generally* (ECF No. 3). Respondents thereafter filed a Response to the OTSC (the "Response" or "Resp.") (ECF No. 5), and Petitioner filed a Reply thereto (the "Reply") (ECF No. 7). As set forth below, the Petition is GRANTED IN PART as to Petitioner's entitlement to a bond hearing. The Court makes no determination as to whether Petitioner is in fact entitled to be released following such a hearing.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Petitioner is a native of Venezuela who was paroled into the United States at the Brownsville, Texas port of entry on or about December 18, 2024. *See* Pet. ¶ 2; Resp. at 1; (ECF

[1] The Court uses the CM/ECF pagination, which appears in the headers of all filings, throughout this Order.

No. 5-2) at 2. At that time, Petitioner was charged with inadmissibility in violation of Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I) as an immigrant without a valid entry document. *See* Resp. at 1–2; (ECF No. 5-1) at 4.

Petitioner filed an application for relief with the Executive Office for Immigration Review on April 18, 2025, which remains pending. *See* Pet. ¶ 3; Resp. at 2. On July 19, 2026, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") following a traffic stop. *See* Resp. at 2; (ECF No. 5-2) at 2. Petitioner alleges that Respondents are unlawfully detaining him at Krome North Service Processing Center ("Krome") in Miami, Florida pursuant to 8 U.S.C. § 1225(b). *See* Pet. ¶¶ 1, 9. He further alleges that he is properly subject to 8 U.S.C. § 1226(a) because he was apprehended within the interior of the United States. *See* Pet. ¶¶ 9–10, 50.

Petitioner brings four Counts: Count One for violation of the INA; Counts Two and Three for violation of due process; and Count Four for release pending determination. *See id.* ¶¶ 51–75. Thus, Petitioner asks the Court to: (1) assume jurisdiction over this matter; (2) issue an order to show cause directing Respondents to show cause why the Petition should not be granted within three days; (3) issue an order prohibiting the transfer or removal of Petitioner from Krome; (4) issue a writ of habeas corpus ordering Respondents to immediately release Petitioner; (5) alternatively, issue a writ of habeas corpus ordering Respondents to release Petitioner under reasonable conditions of supervision; and (6) declare that Petitioner's detention violates his procedural and substantive due process rights under the Fifth Amendment. *See id.* at 16–17.

In the OTSC, the Court assumed jurisdiction over the Petition, ordered that Petitioner was not to be transferred out of this District until the instant proceedings are terminated, ordered Respondents to file one consolidated memorandum of law and fact to show why the Petition should not be granted, and deferred consideration of the other relief requested in the Petition until after

the Response and Reply had been reviewed. *See* OTSC at 2–3. The Response and Reply have since been filed. *See generally* Resp.; Reply.

Respondents argue that: (1) Petitioner is properly detained pursuant to 8 U.S.C. § 1225(b)(2) as an arriving alien; and (2) applicants for admission may only be released on parole pursuant to 8 U.S.C. § 1182(d)(5), and such a determination is solely within the discretion of the Department of Homeland Security ("DHS"). *See* Resp. at 2–7. Petitioner argues in opposition that the Eleventh Circuit's holding in *Hernandez Alvarez v. Warden, Federal Detention Center Miami*, 175 F.4th 1258 (11th Cir. May 6, 2026) makes clear that § 1225 is inapplicable in this matter because Petitioner was not seeking entry when detained. *See* Reply at 3–6.

## II. LEGAL STANDARD

Section 2241 authorizes a district court to grant a writ of habeas corpus whenever a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 533 U.S. 674, 693 (2008) (citation omitted). The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973). Further, for "'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *See Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). The Court's habeas jurisdiction extends to challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

### a. The Policy

The new policy underlying this action, "Interim Guidance Regarding Detention Authority for Applicants for Admission" (the "Policy"), was announced by ICE and promulgated by DHS in coordination with the Department of Justice and defines an "applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1)." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (the "ICE Memo"). The Policy then states that "[e]ffective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole." *Id.* Contrary to previous practice, the Policy imposes mandatory detention regardless of the circumstances of an alien's entry without inspection or admission. *See generally* ICE Memo.

The Board of Immigration Appeals (the "BIA") adopted a consistent position in *Matter of Yajure Hurtado*, which affirmed as a matter of first impression an Immigration Judge's holding that "he lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and the regulation at 8 C.F.R. § 235(B)(1)(ii)." 29 I. & N. Dec. 216, 229 (BIA 2025). On February 18, 2026, the Honorable Sunshine S. Sykes of the United States District Court for the Central District of California issued an Order wherein *Matter of Yajure Hurtado* was vacated as contrary to law under the APA. *See* Order Granting Plaintiff Petitioners' Motion to Enforce Judgment at 19, *Maldonado Bautista et al. v. Santacruz Jr. et al.*, No. 5:25-cv-

01873 (C.D. Cal. Feb. 18, 2026). However, that decision was appealed and the Ninth Circuit granted the Government's request for a stay pending appeal of certain orders issued in the Central District of California case, including the order vacating *Matter of Yajure Hurtado*. *See* Order from Ninth Circuit Court of Appeals, *Maldonado Bautista et al. v. Santacruz Jr. et al.*, No. 5:25-cv-01873 (C.D. Cal. Mar. 31, 2026). Thus, *Matter of Yajure Hurtado* remains in effect pending resolution of that appeal.

Immigration Court refusals to provide bond hearings had already been the subject of much dispute, and as discussed below the Policy has been heavily litigated across the country. The overwhelming outcome of these cases—including in this District—was initially a rejection of refusals to hear bond and/or the Policy as violating the INA in applying § 1225(b), instead of § 1226(a) as required by the INA, to people who entered without admission but were apprehended some time after prior entry, in contrast to those apprehended upon entry or soon thereafter at U.S. ports of entry. *See generally, e.g.*, *Puga v. Ass. Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-cv-24535, 2025 WL 2938369 (S.D. Fla. Oct. 15, 2025) (Altonaga, C.J.); *Sanchez-Moralez v. Field Off. Dir., Mia. Field Off., U.S. Immigr. & Customs Enf't*, No. 26-cv-20217, 2026 WL 496726 (S.D. Fla. Feb. 23, 2026) (Becerra, J.); *Castro v. Parra*, No. 26-cv-20422, 2026 WL 788019 (S.D. Fla. Mar. 20, 2026) (Bloom, J.); Order at 6–11, *Cerro Perez v. Parra*, No. 25-cv-24820 (S.D. Fla. Oct. 27, 2025) (ECF No. 9) (collecting cases).

The Fifth and Eighth Circuits have both held, as the first Circuit Courts to do so, that aliens in situations such as Petitioner's are properly detained pursuant to § 1225(b)(2)(A) and are therefore not entitled to release on bond. *See generally Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). On the other hand, the Second Circuit in *Cunha v. Freden*, No. 25-3141-pr, 2026 WL 1146044 (11th Cir. Apr. 28, 2026)

determined that those same aliens are properly detained pursuant to § 1226(a) and are therefore entitled to a bond determination. The Eleventh Circuit, within which this Court sits, has now similarly found that § 1226(a), and not § 1225(b)(2)(A), covers the detention of aliens found already present in the country and therefore that such detainees are eligible for bond while going through immigration proceedings. *See Hernandez Alvarez*, 175 F.4th at 1262.

**b. Administrative Exhaustion**

While Respondents do not raise failure to exhaust administrative remedies, the Court nevertheless addresses exhaustion to ensure it has subject matter jurisdiction over the Petition. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) ("[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously [e]nsure that jurisdiction exists over a case." (citations omitted)). Exhaustion may be excused "where no genuine opportunity for adequate relief exists . . . or an administrative appeal would be futile." *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) (citations omitted). This is plainly the case here, where Immigration Judges may only properly reach one conclusion absent new precedent from the BIA. *See Puga*, 2025 WL 2938369, at *2 ("Thus, considering *Matter of Yajure Hurtado*, it appears evident that an alien like Petitioner, who has resided in the United States for years but has not been admitted or paroled, will be subject to mandatory detention without bond under section 1225(b)(2) upon review by the BIA." (citing *Matter of Yajure Hurtado*, 29 I&N Dec. at 221)); Order at 3, *Cerro Perez*, No. 25-cv-24820 (S.D. Fla. Oct. 27, 2025) (ECF No. 9) (finding initial bond hearing request futile).

The Court fails to find any basis upon which a bond appeal to the BIA or request for reconsideration or release to an Immigration Judge could possibly result in an outcome other than sustaining Petitioner's detention pursuant to § 1225(b)(2)(A) to the extent *Matter of Yajure*

*Hurtado* continues to be in effect while the Ninth Circuit appeal in *Maldonado Bautista* remains pending. Thus, the Court finds that any prudential exhaustion requirements that may be applicable here are excused for futility.

**c. Statutory Framework**

Turning then to the merits of the Petition, as an initial matter, "[t]he question of whether [§] 1225(b)(2) or [§] 1226(a) governs [p]etitioner's detention is a question of statutory interpretation squarely within the Court's jurisdiction." *Sanchez-Moralez*, 2026 WL 496726, at *3. The Eleventh Circuit has now directly answered this question: § 1226(a) applies to "unadmitted aliens found in the interior of the United States." *Hernandez Alvarez*, 175 F.4th at 1261. In reaching this conclusion, the Eleventh Circuit considered the text, statutory structure, and history of the INA to determine that the terms "applicant for admission" and "seeking admission" may be synonymous on their plain and ordinary meaning but cannot mean the same thing here where "applicant for admission" is a defined term and "seeking admission" is not. *See id.* at 1265–84. As set forth below, this is dispositive of which provision applies to the detention of aliens already present in the United States.

An "applicant for admission" under 8 U.S.C. § 1225 is defined as an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." *Id.* § 1225(a)(1). Section 1225(b)(1) encompasses "all aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," which group of people is generally subject to expedited removal unless they are referred for a credible fear interview and thereby detained pending further consideration of their asylum claim. *Id.*

Section 1225(b)(2) is broader and "serves as a catchall provision that applies to applicants for admission not covered by § 1225(b)(1)," subject to several exceptions. *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Under § 1225(b)(2), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [§] 1229a of this title," which governs removal. 8 U.S.C. § 1225(b)(2)(A); *id.* § 1229a. The term "seeking admission" is not defined. *See id.* § 1225(b)(2)(A); *see generally id.* § 1101. Importantly, detention under § 1225(b)(2) is mandatory, subject to DHS's discretionary parole authority "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *See* 8 U.S.C. § 1225(b)(2); 8 U.S.C. § 1182(d)(5)(A); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269 (D. Mass. 2025); 8 U.S.C. § 1182(d)(5)(A). Such discretionary parole, however, "shall not be regarded as an admission of the alien" and once the purposes thereof have been satisfied, the "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

The Government is also permitted to "detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289. Section 1226(a) provides that upon warrant issued by the Attorney General, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Subject to the provisions of § 1226(c), which applies to the detention of aliens facing criminal charges, pending a decision on whether an alien is to be removed, the Attorney General: (1) may continue detention; (2) may allow release on a bond of at least $1,500 or on conditional parole; and (3) may not provide work authorization unless the alien is a lawful permanent resident or otherwise would receive such authorization. *Id.* §§ 1226(a)(1)–(3).

Unlike § 1225(b)(2), § 1226 provides for a "discretionary detention framework." *See* 8 U.S.C. § 1226(a); *Gomes*, 804 F. Supp. 3d at 269. The arresting immigration officer makes an initial custody determination, which aliens detained under this provision may appeal in a bond hearing before an Immigration Judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Federal regulations require that under § 1226(a), detainees are entitled to "bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) ("To be sure, a noncitizen detained under § 1226(a) is undoubtedly entitled to a bond hearing before an immigration judge.").[2]

The crucial determination, therefore, is whether a person found within the United States and detained in a manner unrelated to any immigration actions (e.g., after a normal traffic stop rather than upon applying for asylum) is nevertheless properly considered an "alien seeking admission" so as to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Such a finding would require a reading that all "applicants for admission," which is any alien present without admission or arriving, are also "seeking admission." *Id.* As discussed above, the Eleventh Circuit found that those two terms are not in fact synonymous, and that a person may fall within the definition of "applicant for admission" without also seeking admission, which in that case was detention following a traffic stop. *Hernandez Alvarez*, 175 F.4th at 1269 ("Petitioners were not applying for entry in any literal sense when they were detained following a traffic stop, nor were they taking any cognizable step to obtain the rights and privileges of lawful entry."); *see also Buenrostro-Mendez*, 166 F.4th at 511 (Douglas, J., dissenting) ("The majority's attempt to read the definition of 'applicant for admission' back into the phrase 'seeking admission,' as if sharing

---

[2] To the extent other cases use the term "noncitizen" interchangeably with "alien," the Court notes that the term "noncitizen" does not appear in the applicable provisions of the INA. The Court uses the term "alien" herein according to its meaning in the applicable provisions of the INA.

a word necessitates sharing a meaning, is unpersuasive.”).

As the Supreme Court has noted, “our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.” *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). In this vein, the Eleventh Circuit concludes as follows:

> Simply put, the language that Congress has chosen to use does not grant to the Executive unfettered authority to detain, without the possibility of bond, every unadmitted alien present in the country. Nowhere in the text, structure, or history of the INA does that reading find steady footing. We are obliged to read the words found in the statute—“an alien who is an applicant for admission” and “an alien seeking admission”—in line with the meaning Congress has given them. When we do so, it appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years.
>
> We therefore reject the Government’s reading and affirm the district court’s orders granting each of the Petitioners habeas corpus relief.

*Hernandez Alvarez*, 175 F.4th at 1285.

**d. Petitioner’s Detention**

Here, Respondents argue that because Petitioner sought admission into the United States at a port of entry, he is properly considered an arriving alien such that mandatory detention is lawful. *See* Resp. at 2–4. According to Respondents, pursuant to 8 U.S.C. § 1182(d)(5), Petitioner maintained this status as an arriving alien indefinitely even though he was paroled into the country. *See* Resp. at 5–6.

The INA does not define the phrase “arriving in the United States,” and the Court therefore turns to the phrase’s ordinary meaning. *See Bondi v. VanDerStok*, 604 U.S. 458, 477 n.4 (2025) (explaining that statutory interpretation requires courts to “interpret the words Congress enacted ‘consistent with their ordinary meaning’” (citation omitted)). Merriam-Webster defines “arrive” or “arriving” as “to reach a destination” or “to make an appearance[,] to come upon the scene.”

*Arrive*, Merriam-Webster's Online Dictionary (last updated Aug. 12, 2026), https://www.merriam-webster.com/dictionary/arrive. Read under its ordinary meaning, an alien "arriving in the United States" thus refers to an alien "who has reached the border or a port of entry," and "would not naturally be read to refer to someone who previously reached the United States via a port of entry, underwent inspection at that port of entry, and then was paroled into the United States." *See Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025); *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 90–91 (D.D.C. 2025) ("Read according to its plain meaning, a noncitizen 'arriving' in the United States would be one who is in the process of reaching his or her destination (the United States) and making an appearance here.").

The ordinary meaning of the phrase is supported by the statutory context. For example, nothing in § 1225 suggests that "arriving in the United States" is an "interminable . . . status that attaches to a noncitizen upon arrival." *See Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 306 (E.D.N.Y. 2025) (cleaned up and citation omitted), *appeal dismissed*, 2026 WL 1208948 (2d Cir. Feb. 25, 2026). Rather, § 1225's use of "arrive," "arrival," and "arriving" appears "to refer to a process that occurs upon physical entry into the" country. *See Qasemi*, 2025 WL 3654098, at *6 (citation omitted); *see also, e.g.*, 8 U.S.C. § 1225(b)(1)(F) ("[A]n alien . . . who arrives by aircraft at a port of entry."); *id.* § 1225(b)(2)(C) ("[A]n alien . . . who is arriving on land (whether or not at a designated port of arrival)[.]"); *id.* § 1225(d)(2) (authorizing the detention of "arriving aliens" on "the vessel or at the airport of arrival"). In contrast, an "applicant for admission" under § 1225(a)(1) describes "a status that does not conclude until the non-citizen is formally *admitted*," rather than upon arrival. *See Qasemi*, 2025 WL 3654098, at *6 (emphasis added).

Moreover, § 1225(b)(1), entitled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled," contemplates the inspection and

screening of arriving aliens. This requirement is not reimposed on aliens like Petitioner who are already present in the interior after having been paroled into the United States. Indeed, nothing in the statute requires an alien whose parole has terminated to return to a port of entry for renewed inspection or screening. *See Linarez v. Stamper*, No. 1:26-CV-00101-JAW, 2026 WL 592294, at *6 (D. Me. Mar. 3, 2026) ("The expiration of [petitioner's] parole does not renew the requirement to return to a port of entry and undergo a new inspection or screening." (citations omitted)); *Walizada v. Trump*, No. 2:25-CV-00768, 2025 WL 3551972, at *11 (D. Vt. Dec. 11, 2025) ("No inspection or screening takes place for a noncitizen residing in the United States who is subsequently detained because his or her parole has expired."). It follows then that "[t]he provisions applying to 'arriving aliens' thus logically apply just to those noncitizens upon their presentation at the border of the United States." *Qasemi*, 2025 WL 3654098, at *6.

For the foregoing reasons, the Court finds that Petitioner finished "arriving in the United States" for purposes of § 1225(b)(1) upon his parole into the United States. *See, e.g.*, *Alfonso v. Current Warden, Miramar ICE Field Off.*, No. 26-60257-CIV, 2026 WL 1083330, at *5 (S.D. Fla. Apr. 22, 2026) (finding that because petitioner was paroled into the United States and "has been present in the United States since 2022[, he is thus] not 'arriving' in any ordinary sense of the word"). Accordingly, as parole does not constitute "an admission of [an] alien," Petitioner is properly considered an applicant for admission as an alien present in the United States who has not been admitted under § 1225(a)(1). *See* 8 U.S.C. § 1182(d)(5)(A).

However, while Petitioner may properly be considered an applicant for admission under this definition, the Court also finds that he is not "seeking admission" within the meaning of § 1225(b)(2)(A). For the reasons discussed above, "seeking admission" and "applicant for admission" are not synonymous, and there is no contention that Petitioner was somehow

attempting to secure admission into the country when he was detained following a traffic stop. The Court thus finds that § 1226(a) and its implementing regulations govern Petitioner's detention, not § 1225(b)(2)(A). Accordingly, Petitioner is detained in violation of the laws of the United States pursuant to 8 U.S.C. § 2241 and is entitled to an individualized bond hearing as a detainee under § 1226(a). The Court will not reach the merits of Petitioner's remaining claims because the relief requested as to a bond hearing in Count One is granted for the reasons stated above. *See Puga*, 2025 WL 2938369, at *6; *Castro*, 2026 WL 788019, at *6. Should Respondents fail to provide Petitioner with a bond hearing as ordered herein, he may renew any due process claims.

**e. Respondents' Arguments**

As a final thought, the Court notes several deficiencies in the arguments advanced in the Response. First, Respondents' position is a disingenuous reading of and categorically foreclosed by the holding in *Hernandez Alvarez*. The Eleventh Circuit specifically explained that rather than allowing for "unfettered authority to detain," it was apparent "that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years." *See Hernandez Alvarez*, 175 F.4th at 1285. The petitioners in *Hernandez Alvarez* were detained by immigration authorities in the interior of the United States following traffic stops, and the Eleventh Circuit emphasized this point in finding that they "were not applying for entry in any literal sense when they were detained . . . nor were they taking any cognizable step to obtain the rights and privileges of lawful entry. They were only present in the country. They were not seeking or pursuing any object, let alone 'lawful entry.'" *Id.* at 1269.

In blatant defiance of *Hernandez Alvarez*, Respondents' position seeks to entirely circumvent that holding by taking the approach of a perpetual parole as the basis for mandatory detention. This argument ultimately flies in the face of the Eleventh Circuit's determination that

an alien found in the interior by immigration authorities following detention for a non-immigration related law enforcement encounter, such as a traffic stop, is not subject to mandatory detention as an arriving alien under § 1225(b)(2).

Second, certain of Respondents' legal arguments were difficult to parse on their face. For example, Respondents state that "Petitioner is an arriving alien" and that he is also "seeking admission" under the *Hernandez Alvarez* analysis, going on to explain that "[b]y its very definition, the term 'applicant for admission' includes two categories of aliens: (1) arriving aliens, and (2) aliens present without admission." Resp. at 3–4. Respondents then include three citations with explanatory parentheticals that each discuss who is considered an applicant for admission, then concluding: "Pursuant to the Eleventh Circuit's interpretation of [§] 1225(b)(2)(A)'s 'seeking admission,' this Court should find that Petitioner does not fall into the class of aliens that *Hernandez Alvarez* provides a bond hearing for under [§] 1226." *See* Resp. at 4. The Court fails to see how the cited authorities support or even relate to Respondents' position when the Eleventh Circuit explicitly and specifically distinguished between applicants for admission and those seeking admission, as discussed above. *Hernandez Alvarez*, 175 F.4th at 1285.

Third, Respondents' characterizations of certain case holdings border on misrepresentation. For example, Respondents state that the "Eleventh Circuit concluded several times that [§] 1225 governs arriving aliens," and then include the following quote from *Hernandez Alvarez* in support: "The INA's text confirms that the two relevant sections on detention govern distinct classes of aliens: § 1225 applies to arriving aliens seeking entry at the border, whereas § 1226 applies to aliens unlawfully in the interior." *See* Resp. at 3 (quoting *Hernandez Alvarez*, 175 F.4th at 1276). However, the very next sentence in *Hernandez Alvarez* states: "By interpreting § 1225 to stretch far beyond the border and ports of entry, the Government vitiates this longstanding

distinction." 175 F.4th at 1276. Respondents ask the Court to do just that here, stretching § 1225 to a traffic stop on the Florida Turnpike. *See* (ECF No. 5-2) at 2.

Fourth, and most troublingly, there is at least one instance of quotes attributed to a case in which they simply do not appear. The following paragraph is included in the Response:

> This principle is well established. In *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206 (1953), the Supreme Court held that an arriving alien continues to be treated as seeking admission "no matter how long" they have physically been present in the United States, because they are "still at the border" for immigration purposes. Under *Mezei*, physical presence, even prolonged physical presence, does not change or extinguish arriving-alien status.

Resp. at 6. As an initial matter, *Mezei* does not use the term "arriving alien," and moreover was addressing an alien "permanently excluded from the United States on security grounds" and stranded on Ellis Island upon the U.S. government's refusal to allow him into the country. *See* 345 U.S. at 207. Turning to the above paragraph, however, the Court is unable to find the phrases "no matter how long" or "still at the border" anywhere in *Mezei*, and no pincite to a particular page is provided that would point the Court in the right direction. *See generally* 345 U.S. As discussed at the hearing on August 6, 2026, to the extent that the use of quotation marks here was not to indicate a verbatim quote, which is their ordinary usage, and was instead intended to be for emphasis or reference, that is an improper usage and the Court fails to appreciate what reference might have been attempted here.

Lastly, certain passages in the Response appear to not apply to Petitioner as female pronouns are used. *See* Resp. at 6 ("This regulatory definition reinforces that Petitioner's parole in lieu of detention in 2014 did not alter her legal status; she has at all times remained an arriving alien."). Petitioner is male, and as discussed above was not paroled in 2014 but rather in 2024. Respondents' inability to be accurate as to basic facts in what is only a twelve-page filing increases the burden on the Court and Petitioner in determining the operative facts to which the law should

be applied, which is particularly problematic in such a fact-intensive inquiry as immigration habeas petitions.

## IV. CONCLUSION

Accordingly, UPON CONSIDERATION of the Petition, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Petition (ECF No. 1) is GRANTED IN PART as to Petitioner's entitlement to a bond hearing. Within seven (7) days of this Order, Respondents shall provide Petitioner with an individualized bond hearing consistent with 8 U.S.C. § 1226(a) or otherwise release him. Such bond may not be denied on the basis that Petitioner is detained pursuant to § 1225(b)(2). The Clerk of Court is instructed to CLOSE this case. All pending motions, if any, are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 17th day of August, 2026.

K. M. Moore

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record